UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,                CRIMINAL NO. 03-80028

v.                               HON. JOHN CORBETT O'MEARA

DORIAN SYKES,

        Defendant.
                             /

GOVERNMENT'S SENTENCING MEMORANDUM

      The United States of America, by its attorneys, Craig S. Morford, United States Attorney for the Eastern District of Michigan, and Frances Lee Carlson, Assistant United States Attorney for the District, respectfully submits this Sentencing Memorandum regarding defendant Dorian Sykes, who is scheduled to be sentenced on February 8, 2005. For the reasons provided below, the government recommends a sentence at the top of the Guideline range of **92 to 115 months** on counts one and four, and **84 months consecutive** on count two.

I.     BACKGROUND

      On February 11, 2003, a grand jury indicted defendant and others in a four count First Superseding Indictment. Defendant was charged in counts one, two and four: Bank Robbery, in violation of 18 U.S.C. § 2113(a); Using, Carrying, and Brandishing a Firearm During and in Relation to a Crime of Violence, in violation of 18 U.S.C. § 924(c) and Felon in

-1-

Possession of a Firearm, in violation of 18 U.S.C. § 922(g)(1).  On February 3, 2004, the defendant pled guilty to Counts one, two and four of the indictment.   During his plea colloquy, defendant admitted that on December 10, 2002, he, along with his two co-defendants, robbed Fifth Third Bank of almost $200,000 and that one of his co-defendants brandished a firearm in order to accomplish the robbery.  He also admitted that subsequent to sustaining at least one felony conviction, he possessed the firearm that was found in his house by the FBI.

II.     SENTENCING CALCULATION

    A.     Statutory Maximum Sentence

As set forth in 18 U.S.C. § 2113(a), the maximum sentence that may be imposed on defendant is 20 years for count one.  As set forth in 18 U.S.C. § 924(c)(1)(A)(ii), the minimum sentence that may be imposed on defendant is 7 years consecutive for count two.  As set forth in 18 U.S.C. § 922(g), the maximum sentence that may be imposed on defendant is 10 years for count four.

    B.     The Sentencing Guidelines After Booker

In United States v. Booker, 2005 WL 50108 (U.S. Jan. 12, 2005), the Supreme Court held that the United States Sentencing Guidelines, when used to create mandatory sentence ranges, violate the Sixth Amendment principles articulated in Blakely v. Washington, 124 S. Ct. 2531 (2004).  The Court determined that by making the top (and bottom) of the range mandatory, the Guidelines effectively vested in a defendant a constitutionally protected interest in his sentence not exceeding the top of that range.  As a result, adding enhancements to offense levels, which effectively raised the defendant's sentence range, impinged upon the constitutionally protected interest in the lower sentence range.  Under the Sixth Amendment and

Apprendi, any such increase in a defendant's sentence can only be based upon jury findings, applying a beyond a reasonable doubt standard. Rather than require that all such factual determinations be submitted to juries, the Court instead simply eliminated a defendant's vested and protected interest in the lower sentence range. The Court did this by excising that part of the Sentencing Reform Act which had made the Guidelines mandatory, 18 U.S.C. § 3553(b)(1), and as a result, sentencing courts are no longer prohibited from imposing a sentence outside the applicable Guideline range, up to the statutory maximum for each count of conviction. Booker, 2005 WL 50108, at *16. The sentence imposed will be subject to review by the Court of Appeals for "reasonableness." Id. at *24.

Despite the hue and cry attending Booker, neither the Sentencing Guidelines nor the Sentencing Reform Act were thrown out and rendered useless by Booker, and we are not returned to the pre-Guidelines status quo. Instead, the primacy of the Sentencing Reform Act was, if anything, reaffirmed by the various opinions in Booker. The Court made emphatically clear that federal sentences must conform to the goals and policy determinations set forth by Congress in § 3553(a), including most significantly the goal of reducing sentencing disparity. The first step in that effort remains the calculation of a Sentencing Guideline range, in accordance with the U.S. Sentencing Guidelines. As directed by the Court, "[t]he district courts, while not bound to apply the Guidelines, must consult those Guidelines and take them into account when sentencing." Id. at *27.

The resulting Guideline range is not simply an arbitrary set of numbers, moreover, but instead represents the collective wisdom of thousands of judicial sentencing decisions, made over thousands of cases across the country. The original Guidelines ranges, in fact, were based

upon the actual sentences imposed by judges under the previous discretionary sentencing system. These ranges embody the considered implementation of the core values of the Sentencing Reform Act, including those required to be considered by every sentencing court under Section 3553(a).

The Booker court repeatedly emphasized the primacy of those core values of the Sentencing Reform Act, and of the requirement that every federal criminal sentence continue to reflect the values and factors set forth in § 3553(a). These factors include "the nature and circumstances of the offense and the history and characteristics of the defendant;" "the need for the sentence imposed -- (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;" and "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct . . . ." Although it is always difficult to put a specific number to a value or idea, by distilling the collective wisdom of thousands of sentencing decisions and adding its own expertise the Sentencing Commission has done exactly that. The resulting ranges cannot, and should not, be disregarded lightly.

Consistent with this, the government commends to the court's attention the recent opinion in United States v. Wilson, 2005 WL 78552 (D. Utah Jan. 13, 2005), which reached this same conclusion. In Wilson, Judge Cassell noted that the Guidelines represent the product of an expert commission, which has studied the sentencing process at great length, under the specific

mandate of Congress to fashion recommended sentences which carry out the purposes defined by Congress.  The resulting Guidelines, according to Wilson, plainly reflect the public's will, as expressed by their democratically elected representatives, in that Congress has repeatedly approved of the Guidelines or acted to adjust them to Congressional preference.  Wilson further observed that guided sentencing appears to have had a positive impact in deterring criminal conduct throughout the country, and thus serves the purpose of deterrence as well as punishment and fairness.  For all of these reasons, Judge Cassell determined that "the court will give heavy weight to the Guidelines in determining an appropriate sentence. In the exercise of its discretion, the court will only depart from those Guidelines in unusual cases for clearly identified and persuasive reasons."  Id. at *1.

As a corollary to the notion that the guidelines ranges best reflect the sentence range which captures the goals and values the court is required to reflect in its sentence, the Sentencing Reform Act also sought to reduce, to the greatest extent possible, the sentence disparities which had previously occurred in federal sentences.  That congressional priority remains a significant factor for the court to implement in sentencing.  Indeed, running through all of the opinions in Booker is a recognition of this important policy goal.  See, e.g., id. at *21 (majority opinion of Breyer, J.) ("Congress' basic goal in passing the Sentencing Act was to move the sentencing system in the direction of increased uniformity."); id. at *19 ("Congress' basic statutory goal -- a system that diminishes sentencing disparity -- depends for its success upon judicial efforts to determine, and to base punishment upon, the *real conduct* that underlies the crime of conviction."); id. at *42 (dissenting opinion of Stevens, J.) ("The elimination of sentencing disparity, which Congress determined was chiefly the result of a discretionary sentencing

regime, was unquestionably Congress' principal aim."); id. at *47 (dissenting opinion of Scalia, J.) ("the primary objective of the Act was to reduce sentencing disparity."). Relying upon the Sentencing Guidelines range as presumptively correct will, of course, effectuate this congressional mandate.

Finally, the government further notes that the Booker court left intact those portions of the Sentencing Reform Act which require a sentencing court to state its reasons for the sentence imposed. Tellingly, the Booker court left intact the provision which requires a sentencing judge to state, in writing in the judgment, the specific reasons for any sentence which deviates from the applicable Guideline range. 18 U.S.C. § 3553(c). A court need not provide specific reasons for a sentence which does not deviate from the Guideline range, because of course that range is presumptively reasonable and accurately reflects the congressional sentencing priorities.

Accordingly, consistent with all of the opinions in Booker, a sentence within the Sentencing Guideline range is presumptively reasonable, and accommodates the Congressional purpose, affirmed by the Supreme Court, of obtaining fair sentences which are uniform to the extent possible. In this case, as explained further below, no unusual circumstances exist which warrant an exception to the preference for Guideline sentencing. Therefore, the government respectfully recommends that the Court sentence the defendant within the Guidelines range set forth below.

### C. Sentencing Guidelines Calculations.

The Probation Department, in its presentence investigation report, determined a guideline range of 92 to 115 months on counts one and four, based on a total offense level of 23 (includes a 3 point reduction for acceptance of responsibility) and a criminal history category of VI. In

calculating the offense level, the Probation Department correctly started at a base offense level of 20 under U.S.S.G. § 2B3.1(a). Pursuant to section 2B3.1(b)(1), an additional two points was assessed because the property of a financial institution was taken. Two more points were added under section 2B3.1(b)(7)(C) because the amount of loss exceeded $50,000. Finally, under section 3C1.1, another two points were assessed for obstruction of justice based on defendant's attempt to escape from custody in this case.

The government agrees with the Guideline calculations of the Probation Department, which represent a reasonable and appropriate sentence in this case.

III.     GOVERNMENT'S RECOMMENDATION

As set forth in the PSR, with an offense level of 23 and a criminal history category of VI, defendant falls within the sentencing range of 92 - 115 months on Counts one and four. The government respectfully recommends that the Court impose a period of incarceration within this Guideline range. Such a sentence would recognize the values and factors set forth in § 3553(a), such as: the seriousness of defendant's offense conduct; the defendant's criminal recidivism; his history of probation and parole violations; the defendant's escalating criminal activity; the defendant's deserved and just punishment; to promote respect for the law and adequate deterrence to criminal conduct; to protect the public from further crimes of the defendant; and to promote uniformity in sentencing.

Defendant, through his standby counsel, requests in his supplemental sentencing memorandum that this court sentence him below the advisory guideline range for the same reasons set forth in both of defendant's motions for downward departure. Specifically, he seeks

a lower sentence because his criminal history is overstated, and also because he provided some degree of cooperation to state authorities. These proffered reasons simply do not justify a sentence below the presumptively reasonable sentence within the guideline range calculated by probation. The government responded to defendant's motion for downward departure based on overstated criminal history and countered that defendant's criminal history reflects a pattern of escalating criminal behavior that is likely to continue. A criminal history category of VI, as calculated by probation, accurately results in a reasonable sentence in light of the factors the court is required to consider under § 3553(a). Defendant also argues that his cooperation with Inkster Police Department justifies a sentence below the guideline range. As described in the letter written by Detective Delgreco (attached to defendant's supplemental sentencing memorandum), defendant merely provided a written statement regarding another defendant's jailhouse admissions. The detective admits that it is unknown how much defendant's statement influenced the result in that case. Accordingly, given the speculative nature of that cooperation, it should not justify a departure from a presumptively reasonable sentence within the 92 to 115 month range.

For all of the above reasons, the government respectfully recommends that the Court impose a period of incarceration at the top of the Guidelines range established by the PSR.

Respectfully submitted,

CRAIG S. MORFORD
United States Attorney


/s Frances Lee Carlson
Frances Lee Carlson
Assistant United States Attorney
211 W. Fort Street, Suite 2001
Detroit, Michigan 48226
(313) 226-9696
Frances.carlson@usdoj.gov

Date:   February 1, 2005.