UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v

    Case No. 03-cr-80028

DORIAN SYKES,

    HON. MARK A. GOLDSMITH

    Defendant.
_____/

**OPINION & ORDER
DENYING DEFENDANT'S EMERGENCY MOTION FOR RELEASE (Dkt. 215)**

This matter is before the Court on Defendant Dorian Sykes's pro se emergency motion for release (Dkt. 215). Sykes contends that his release is warranted under 18 U.S.C. § 3145(c) in light of the health risks posed by his continued incarceration during the COVID-19 pandemic. For the reasons that follow, the Court denies Sykes's motion.[1]

**I. BACKGROUND**

In March 2005, Sykes was convicted in the present action of bank robbery, brandishing a firearm during a crime of violence, and being a felon in possession of a firearm, Judgment (Dkt. 110), and in a separate criminal action of perjury, Judgment, United States v. Sykes, Case No. 04-cr-80623, (Dkt. 18). Sykes served seventeen years in custody for these convictions and was released on a three-year term of supervision on July 1, 2019.

On August 12, 2019, just six weeks after being released, Sykes violated the conditions of his supervised release by robbing two banks. During the first robbery, Sykes presented the bank

---

[1] Because oral argument will not assist in the decisional process, the motions will be decided based on the parties' briefing. See E.D. Mich. Administrative Order 20-AO-024 (providing that motions to review detention orders "will be decided on the papers submitted, unless the assigned judge orders otherwise").

teller with a demand note stating, "It's a robbery, don't make it obvious and no one will get hurt. No dye packs." Plea Agreement at 2, United States v. Sykes, Case No. 19-cr-20550, (Dkt. 119). The teller collected $1,220.00 and handed it to Sykes. Id. During the second robbery, Sykes presented the bank teller with a demand note stating, "This is a robbery." Id. at 4. He also verbally told the teller, "This is a robbery, give me everything, no packs and don't sound the alarm." Id. When the teller did not move quickly enough, Sykes demanded she put her hands up and stated, "Don't mess with me." Id. Another teller collected $810.00 and gave it to Sykes. Id.

Sykes was charged with these two bank robberies in United States v. Sykes, Case No. 19-cr-20550 (E.D. Mich.), a separate criminal action assigned to District Judge Paul D. Borman. During a consolidated detention hearing for the present action and the new bank robbery case, Sykes was ordered detained by Magistrate Judge Anthony P. Patti under 18 U.S.C. §§ 3142 and 3143. Public Audio of Initial Appearance (Dkt. 184). District Judge Victoria A. Roberts denied Sykes's appeal of the detention order. 8/16/19 Order (Dkt. 188). On February 18, 2020, Sykes pleaded guilty to the bank robbery charges and is presently awaiting sentencing. See generally Plea Agreement, United States v. Sykes, Case No. 19-cr-20550, (Dkt. 119). On March 3, 2020, Sykes pleaded guilty on the record to the supervised release violations in the present action and awaits sentencing. He now seeks release pending his sentencing.[2]

## II. ANALYSIS

A defendant's release or detention pending sentencing for is governed by 18 U.S.C. § 3143(a).[3] The statute provides that pending the imposition of a sentence, "the judicial officer

---

[2] Sykes filed an identical motion in the criminal proceedings pending before Judge Borman. His motion was denied. See United States v. Sykes, No. 19-20550, 2020 WL 1685463, at *3 (E.D. Mich. Apr. 7, 2020).

[3] Sykes seeks release under 18 U.S.C. § 3145(c), which provides that a court may order release of

2

shall order that a person who has been found guilty of an offense and who is awaiting imposition or execution of sentence . . . be detained, unless the judicial officer finds by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released . . . ." 18 U.S.C. § 3143(a)(1). "Release is no longer favored once guilt of a crime has been established," and the defendant must overcome a presumption against release. United States v. Bowman, 98 F.3d 1343 (6th Cir. 1996) (table decision) (citing United States v. Vance, 851 F.2d 166, 170 (6th Cir. 1988)). Thus, a defendant bears the burden of establishing by clear and convincing evidence that he is not likely to flee or pose a danger to the public if released.

In determining whether a criminal defendant presents a flight risk or a danger to the community if released, courts generally evaluate the following four factors: (1) the nature and circumstances of the offense charged, (2) the weight of the evidence against the person, (3) the history and characteristics of the person, and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. 18 U.S.C. § 3142(g). Based on these factors, Sykes is unable to demonstrate by clear and convincing evidence that he is not a flight risk and would not pose a risk to the safety of the community.

### A. Nature and Circumstances—18 U.S.C. § 3142(g)(1)

Under 18 U.S.C. § 3142(g)(1) this Court is to consider "the nature and circumstances of the offense charged, including whether the offense is a crime of violence . . . ." Here, Sykes admitted that he violated the conditions of his supervised release by committing two bank robberies, which constitute crimes of violence. See United States v. Henry, 722 F. App'x 496, 500

---

"[a] person subject to detention pursuant to section 3143(a)(2) or (b)(2)" if that person meets the conditions of release under § 3143(a)(1) or (b)(1), and if it is clearly shown that there are exceptional reasons justifying release. Regardless of whether § 3145(c) applies in the present case, Sykes is unable to meet the conditions of release under § 3143(a)(1), for the reasons explained below.

3

(6th Cir. 2018) (citing 18 U.S.C. § 2113(a)) ("A necessary element of bank robbery is the use of 'force and violence' or 'intimidation.'"). Sykes accomplished the robberies by threatening and intimidating the bank tellers, implying that he was armed and would harm them if they failed to comply with his demands. This offense is serious enough to warrant a stiff maximum penalty of twenty years' imprisonment. See 18 U.S.C. § 2113(a); see also Baldwin v. New York, 399 U.S. 66, 68 (1970) ("In deciding whether an offense is 'petty,' we have sought objective criteria reflecting the seriousness with which society regards the offense . . . and we have found the most relevant such criteria in the severity of the maximum authorized penalty.").

The seriousness of Sykes's conduct is further exacerbated by the fact that he committed the robberies just six weeks after he was released on supervision, following a lengthy period of incarceration for the same type of offense. Thus, Sykes's unabated criminal behavior demonstrates that he poses a significant danger to the community. The nature of the instant offense, therefore, weighs heavily in favor of Sykes's detention.

### B. Weight of the Evidence—18 U.S.C. § 3142(g)(2)

Title 18 U.S.C. § 3142(g)(2) instructs this Court to consider "the weight of the evidence against the person." The factor "goes to the weight of the evidence of dangerousness, not the weight of the evidence of the defendant's guilt." Stone, 608 F.3d at 948; see also Hazime, 762 F.2d at 37 (explaining weight-of-evidence factor "deals with the factors to be considered in determining whether there are conditions which will assure the appearance of the accused and safety of the community").

Here, the weight of the evidence of Sykes's dangerousness and risk of non-appearance is strong. Sykes has pleaded guilty not only to committing two bank robberies, but also to violating the conditions of his supervised release stemming from the same type of offense. Sykes's

4

dangerousness and risk of flight is further confirmed by his extensive criminal history and multiple instances of probation and release violations, as described below. Accordingly, this factor strongly favors detention.

### C. History and Characteristics—18 U.S.C. § 3142(g)(3)

Under this factor, this Court must consider the following:

> [T]he history and characteristics of the person, including—
>
>> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>>
>> (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law . . . .

18 U.S.C. § 3142(g)(3).

While Sykes's criminal history is extensive, even more troubling is his established pattern of violating the conditions of probation or supervision. In January 2001, while on probation for a 1997 conviction for retail fraud and loitering, Sykes was arrested for possession of a controlled substance. Sykes was released on bond but was again arrested in April 2001 for receiving and concealing stolen property and for resisting and obstructing a police officer. Sykes pleaded guilty to these offenses and was ultimately sentenced to six months' imprisonment and two years' probation. After serving minimal time in custody, Sykes was released and placed at the Salvation Army–Harbor Light Center. However, he subsequently absconded from that program and from probation.

In July 2002, Sykes was arrested and convicted for the unlawful use of a motor vehicle. Sykes initially failed to appear for sentencing, but following his eventual arrest, he was sentenced

to six months' imprisonment and five years of probation. A probation violation warrant was issued in September 2002 as a result of Sykes's failure to comply with the terms of his probation. While that warrant was active, Sykes committed the bank robbery that resulted in the present criminal case. As described above, Sykes served seventeen years in custody in connection with that offense, and, six weeks after being released on supervision, committed two additional bank robberies. Given his past criminal conduct, poor record for appearing at court proceedings, and apparent disregard for the terms of his probation, Sykes's history and characteristics weigh strongly in favor of detention.

### D. Danger to Community—18 U.S.C. § 3142(g)(4)

Under the pertinent part of 18 U.S.C. § 3142(g)(4), this Court must consider "the nature and seriousness of the danger to any person or the community that would be posed by the person's release."

There is strong evidence that Sykes would present a danger to the community and a risk of flight were he to be released. Sykes has committed no less than three bank robberies, two of which occurred shortly after he was released on supervision. Further, Sykes has a history of committing criminal offenses while on probation or supervised release. Accordingly, Sykes's release would pose a significant danger to the public.

### E. COVID-19

Sykes contends that his release is warranted in light of the health risks posed by continued incarceration during the COVID-19 pandemic. The Court is mindful of the exceptionally grave and unprecedented nature of COVID-19, which has continued to spread exponentially throughout the State of Michigan. And as acknowledged by the Centers for Disease Control and Prevention ("CDC"), incarcerated individuals face an even greater risk of transmission, given the conditions

6

frequently present in correctional and detention facilities. See United States v. Kennedy, No. 18-20315, 2020 WL 1493481, at *2 (E.D. Mich. Mar. 27, 2020). These conditions include, among other things, the highly congregational environment, the limited ability of incarcerated persons to exercise effective disease prevention measures (e.g., social distancing and frequent handwashing), and potentially limited onsite healthcare services. Id.

While the generalized risks of COVID-19 cannot be disputed, courts evaluating whether release from custody is necessary must evaluate the particularized risks posed to an individual defendant. See United States v. Lee, No. 19-20112, 2020 WL 1540207, at *3 (E.D. Mich. Mar. 30, 2020). Some courts evaluating the impact of COVID-19 on the pretrial release calculus have considered the following four factors:

> (1) the original grounds for the defendant's pretrial detention, (2) the specificity of the defendant's stated COVID-19 concerns, (3) the extent to which the proposed release plan is tailored to mitigate or exacerbate other COVID-19 risks to the defendant, and (4) the likelihood that the defendant's proposed release would increase COVID-19 risks to others.

United States v. Clark, No. 19-40068, 2020 WL 1446895, at *3 (D. Kan. Mar. 25, 2020). Although these factors have been applied in the context of motions for pretrial release under 18 U.S.C. § 3142(i), they are nevertheless relevant to Sykes's motion for release pending sentencing.

First, as discussed above, the § 3142(g) factors overwhelmingly demonstrate that Sykes presents a danger to the community and a risk of flight, and that no condition or combination of conditions could reasonably assure the safety the community or his appearance in court. This factor weighs decidedly in favor of Sykes's continued detention.

Second, Sykes's health concerns, to the extent that they exist, are being addressed. Sykes claims he suffers from diabetes, which places him at greater risk of developing severe complications from COVID-19. Def. Mot. at 3. However, the Government notes Sykes's

7

contradictory assertion in the pretrial report that "he is in excellent physical health with no medical problems reported," a statement confirmed by his mother. Even assuming that Sykes suffers from diabetes, he has not provided any evidence demonstrating that he is receiving inadequate medical care for this condition. Indeed, the Government contends that Sykes is listed in the United States Marshal Service database as a Type II diabetic, controlled with diet and not insulin. Gov't Resp. at 15 (Dkt. 217). There is no reason to doubt that Sykes will continue to receive appropriate care. See United States v. Jones, No. 19-00249, 2020 WL 1511221, at *3 (W.D. Pa. Mar. 29, 2020) (denying motion for release under § 3142(i) because the defendant failed to demonstrate that his medical needs were not being addressed at the detention facility); see also United States v. Green, No. 19-85, 2020 WL 1493561, at *2 (W.D. Pa. Mar. 27, 2020) (same).

Nor has Sykes demonstrated that he has been exposed to the virus as a result of his incarceration. To the contrary, the Government responds that Lieutenant Ryan McConnachie, of the Sanilac County Sheriff's Office, reports that no prisoners at Sanilac County Jail ("Sanilac"), where Sykes is detained, have been diagnosed with COVID-19 as of March 30, 2020. Gov't Resp. at 12-13.[4] Further, Sanilac has implemented a variety of precautions in an effort to reduce the risk of COVID-19 transmission within the prison. Sanilac, which is currently operating at 60% of its total housing capacity, is limiting its intake of new detainees to new arrests for violent crimes. Id. at 13. All new detainees are being medically screened for fever and other COVID-19 symptoms before entering the jail. Id. If a detainee's responses to screening questions raise concerns, or if a detainee exhibits any symptoms, that individual would be either evaluated by Sanilac's onsite

---

[4] Sanilac reports that on March 14, 2020, one detainee had contact with a defense attorney who, Sanilac subsequently learned, previously had contact with a person later diagnosed with COVID-19. Gov't Resp. at 6 n.1. As a precaution, Sanilac placed the detainee in quarantine for fourteen days. Id. The detainee did not develop any symptoms or illness during those fourteen days and has since been removed from quarantine. Id.

medical staff or transported directly to a local hospital for medical clearance. Id. As a matter of course, new detainees are being isolated in quarantine for several days to further screen for development of COVID-19 symptoms. Id. Any detainee who does exhibit symptoms is quarantined for fourteen days. Id.

Further, Sanilac has ceased all visitation from family members and attorneys. Id. Staff members are screened daily with a questionnaire and temperature check and have been directed not to enter the facility if they feel sick. Id. at 14. Detainees have been provided with disinfectant spray to use within their cells, and jail personnel wipe down surfaces within the facility several times per day. Id. at 13-14. Finally, all social programming for detainees has been suspended. Id. at 14. Such measures are consistent with those recommended by the CDC. See Kennedy, 2020 WL 1493481, at *2.

Sykes disputes whether many of these reported precautions are being implemented. He claims that he is unable to practice social distancing and that Sanilac has a shortage of cleaning and hygiene supplies, does not adequately clean the shared bathroom facilities, does not sanitize recreation equipment, is still allowing visitors, and is not testing prisoners who exhibit COVID-19 symptoms. Def. Supp. Br. at 4 (Dkt. 216); Def. Reply at 6-7 (Dkt. 218). The Court does not find—nor did Judge Borman find—Sykes's claims regarding the lack of precautionary measures credible. See Sykes, 2020 WL 1685463, at *3. Sykes has demonstrated a poor character for truthfulness, given his prior conviction for perjury. Additionally, Sykes's assertion that Sanilac is permitting visitors, Def. Supp. Br. at 4, is contradicted by his own statement that he is unable to visit with his attorney, Def. Reply at 2. This Court has not discovered any press coverage contradicting the Government's representations regarding the conditions and precautions being

implemented at Sanilac.[5]  Finally, although Sykes contends that Sanilac does not employ a mental health provider, Def. Reply at 7, there is no connection between Sykes's mental health history and his susceptibility to developing complications as a result of contracting COVID-19.  This factor, therefore, also weighs in favor of Sykes's continued detention.

Third, Sykes has not explained how his release would minimize his risk of contracting COVID-19.  Although Sykes proposes confinement at his aunt's home, he does not explain who else will reside at or frequent the home, or identify any COVID-19 precautions being implemented there.  See United States v. Smoot, No. 2:19-CR-20, 2020 WL 1501810, at *3 (S.D. Ohio Mar. 30, 2020).  In contrast, the record demonstrates that access to Sanilac is limited and strictly enforced, thereby minimizing Sykes's potential exposure to the virus.  See id.  This factor weighs in favor of Sykes's continued detention.

Finally, Sykes's release to home confinement would increase the risk of others contracting COVID-19.  As other courts have recognized, "'[a] defendant who is unable to comply with conditions of release poses potential risks to law enforcement officers who are already tasked with enforcing shelter-in-place orders in many cities and counties, pretrial services officers who come into contact with the defendant for supervision, and others if that individual is taken back into custody.'"  Id. (quoting Clark, 2020 WL 1446895, at *7); see also United States v. Aiad-Toss, No. 19-00521, 2020 WL 1514482, at *2 (N.D. Ohio Mar. 30, 2020) (noting that releasing a defendant

---

[5] Indeed, Sanilac has worked with the courts and sheriff department to release as many inmates as possible without endangering the public.  See Times Herald, available at https://www.thetimesherald.com/story/news/2020/04/02/st-clair-county-jail-reducing-inmate-population-during-coronavirus-pandemic/5110937002/ (last visited Apr. 6, 2020).  Further, as of April 8, 2020, the State of Michigan reported only twenty-two cases of COVI-19 within Sanilac County.  See Confirmed Cases By County, available at https://www.michigan.gov/coronavirus/0,9753,7-406-98163-520743--,00.html (last visited Apr. 9, 2020).

to home detention and electronic monitoring unduly burdens pretrial services officers, who must perform installation and monitoring). Sykes's history of probation and supervised release violations renders these concerns all the more troubling. Additionally, Sykes's release may increase the risk of infection to the family members with whom he would reside. See Dodd, 2020 WL 1547419, at *3. Consequently, this factor likewise favors Sykes's continued detention.

In sum, these factors do not demonstrate that Sykes's release pending sentencing is warranted in light of the risks presented by the COVID-19 pandemic.

**F. Preparation of a Defense**

Sykes also contends that he has been unable to prepare his pre-sentencing defense because Sanilac has suspended attorney visitation and monitors all phone calls. Def. Reply at 2. But prisons are obligated to permit unmonitored calls with legal counsel. Title 28 C.F.R. § 540.102 provides that prison "[s]taff may not monitor an inmate's properly placed call to an attorney. The Warden shall notify an inmate of the proper procedures to have an unmonitored telephone conversation with an attorney." In light of this statutory duty to permit unmonitored calls to legal counsel, it is not credible that Sanilac does not permit for such contingencies. Indeed, while Sykes states generally that phone calls are monitored, he does not specifically allege that he has requested to place an unmonitored call to his attorney—or that such a request has been denied.

Additionally, in an emergency letter submitted to the Court, Sykes contends that prison staff have not permitted him access to the law library. Again, the Court does not find Sykes's assertion credible. In connection with his present motion, Sykes has filed comprehensive briefing with citations to legal authority and recent caselaw. The substance of these filings sharply undercuts his assertion that he is being denied access to legal resources.

## III. CONCLUSION

For the reasons discussed above, Sykes has failed to establish by clear and convincing evidence that he is not likely to flee or pose a danger to the safety of any other person or the community if released. Accordingly, the Court finds that Sykes must remain detained pending his sentencing. Sykes's motion for release (Dkt. 215) is denied.

SO ORDERED.

Dated: April 13, 2020  
     Detroit, Michigan

s/Mark A. Goldsmith  
MARK A. GOLDSMITH  
United States District Judge

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on April 13, 2020.

s/Karri Sandusky  
KARRI SANDUSKY  
Case Manager