UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

                Plaintiff,                        Case No. 03-80028

vs.                                          HON. MARK A. GOLDSMITH

DORIAN SYKES,

                Defendant.

_____/

## OPINION & ORDER
## (1) DENYING DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE (Dkt. 262) AND (2) GRANTING DEFENDANT'S MOTION FOR CLARIFICATION (Dkt. 272)

Defendant Dorian Sykes has a lengthy criminal history, having been prosecuted in three separate cases in this District.  In the first case, before Judge John Corbett O'Meara, Sykes pleaded guilty to aiding and abetting bank robbery, aiding and abetting the carrying and brandishing of a firearm during a crime of violence, and being a felon in possession of a firearm.  Judgment at 1–2 (Dkt. 110).[1]  On February 15, 2005, Judge O'Meara sentenced Sykes to 174 months' imprisonment. Id. at 2.  While Sykes was testifying during a plea hearing in the first case, he committed perjury. United States v. Sykes, case no. 04-cr-80623, Indictment (Dkt. 1).  Thus, a second case, also before Judge O'Meara, was initiated charging Sykes with perjury.  See id.  On March 22, 2005, Judge O'Meara sentenced Sykes to 60 months for perjury, with 30 months running concurrently with his sentence in the instant case.  See United States v. Sykes, case no. 04-cr-80623, Judgment (Dkt. 18).[2]

---

[1] This case was reassigned to the undersigned on June 28, 2019.

[2] This case was reassigned to the undersigned on August 9, 2019.

In the third case, before Judge Paul Borman, Sykes was indicted for bank robbery, which he committed just several weeks after finishing his prison sentences for the first two cases.  United States v. Sykes, case no. 19-cr-20550, Indictment (Dkt. 8).  Sykes's commission of the bank robbery also violated conditions of his supervised release in his two prior cases (i.e., the conditions prohibiting Sykes from committing another crime while on supervised release).  See Am. Order with Petition for Violation of Supervised Release (Dkt. 239); United States v. Sykes, case no. 04-cr-80623, Am. Order with Petition for Violation of Supervised Release (Dkt. 82).

 In both of the supervised release violation cases, this Court sentenced Sykes to 60 months' imprisonment, to run concurrently with one another as well as the sentence imposed in case no. 19-cr-20550.  Supervised Release Violation Judgment at 1–2 (Dkt. 240); United States v. Sykes, case no. 04-cr-80623, Supervised Release Violation Judgment at 1–2 (Dkt. 83).  In case no. 19-cr-20550, Judge Borman sentenced Sykes to 68 months' imprisonment for bank robbery, to run concurrently with the sentences imposed by this Court for the supervised release violations in case nos. 03-cr-80028 and 04-cr-80623.  United States v. Sykes, case no. 19-cr-20550, Judgment at 1–2 (Dkt. 155).  Sykes is currently incarcerated at USP Coleman II.  Accounting for good conduct time, his anticipated release date is July 7, 2024.

This matter is now before the Court on Sykes's motion for compassionate release (Dkt. 262).[3] He filed a nearly identical motion in case no. 19-cr-20550, which Judge Borman denied.  United

---

[3] Sykes initially filed this motion pro se.  He also filed an affidavit (Dkt. 266), release plan (Dkt. 267), memorandum regarding his rehabilitation efforts (Dkt. 268), and a letter (Dkt. 274).  The Government filed a response (Dkt. 263).  Sykes then filed a motion for appointment of counsel (Dkt. 265), which the Court granted (Dkt. 269), allowing Sykes to submit supplemental briefing in support of his motion through newly-appointed counsel.  After appointment of counsel, Sykes filed a pro se reply (Dkt. 271) and reply through counsel (Dkt. 275).  The Government later filed a notice of supplemental authority (Dkt. 276), to which Sykes filed a response through counsel (Dkt. 277).  Sykes also filed a supplemental brief regarding the alleged outbreak of Legionnaires' disease at USP Coleman II (Dkt. 278).

<u>States v. Sykes</u>, case no. 19-cr-20550, Order Denying Mot. for Compassionate Release (Dkt. 215). Having considered all briefing and record materials submitted by the parties, the Court denies Sykes's motion for compassionate release.[4],[5]

## I. ANALYSIS

The First Step Act (FSA) modified the statute concerning the compassionate release of federal prisoners, 18 U.S.C. § 3582(c), such that district courts may entertain motions filed by incarcerated defendants seeking to reduce their sentences. <u>United States v. Ruffin</u>, 978 F.3d 1000, 1003–1004 (6th Cir. 2020). Before granting a compassionate release motion, a district court must engage in a three-step inquiry: (i) the court must find that "extraordinary and compelling reasons warrant [a sentence] reduction"; (ii) it must ensure "that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission"; and (iii) it must "consider[] all relevant sentencing factors listed in 18 U.S.C. § 3553(a)." <u>United States v. Jones</u>, 980 F.3d 1098, 1101 (6th Cir. 2020) (citing 18 U.S.C. § 3582(c)(1)(A)). If all of those requirements are met, the district court "may reduce the term of imprisonment," but it need not do so. 18 U.S.C. § 3582(c)(1)(A).

Regarding the first step of the inquiry, the United States Court of Appeals for the Sixth Circuit has held that, with respect to motions for compassionate release filed by imprisoned individuals, "extraordinary and compelling" reasons are not limited to those set forth in U.S.S.G.

---

[4] After the Government filed its response—in which it argues, in part, that Sykes failed to properly exhaust his administrative remedies—Sykes filed a motion for clarification (Dkt. 272), asking the Court to "render clarification . . . [as to] whether Defendant has properly exhausted his administrative remedies," <u>id.</u> at 4. Because the Court addresses the issue of exhaustion in ruling on Sykes's motion for compassionate release, the Court grants Sykes's motion for clarification.

[5] Because oral argument will not aid the Court's decisional process, the motion will be decided based on the parties' briefing. <u>See</u> E.D. Mich. LR 7.1(f)(2).

§ 1B1.13.  Jones, 980 F.3d at 1109.  It has further held that "[u]ntil the Sentencing Commission updates § 1B1.13 to reflect the [FSA], district courts have full discretion in the interim to determine whether an 'extraordinary and compelling' reason justifies compassionate release when an imprisoned person files a § 3582(c)(1)(A) motion."  Id.

The Court considers (i) whether Sykes properly exhausted his claims, (ii) whether extraordinary and compelling circumstances compel Sykes release, and (iii) whether the § 3553(a) factors support Sykes's release.

**A. Exhaustion**

Before an inmate moves for compassionate release under § 3582(c)(1), the inmate must either exhaust his or her administrative remedies with the Bureau of Prisons (BOP) or wait 30 days from when the inmate filed a request with his or her warden.  18 U.S.C. § 3582(c)(1)(A); United States v. Alam, 960 F.3d 831, 832 (6th Cir. 2020).

On July 14, 2021, Sykes sent a request to the warden of his institution, seeking compassionate release on two grounds: (i) the institution's alleged failure to "implement the First Step Act of 2018" and (ii) Sykes's "symptoms consistent with . . . HPLORI [sic]."  Mot. at PageID.1480.  Sykes filed the instant motion over 30 days later, on August 30, 2021, seeking compassionate release on three grounds: (i) USP Coleman II's failure to implement the FSA, (ii) the alleged presence of an infection known as Helicobacter pylori (H. pylori) at this prison, and (iii) Sykes's fears of contracting COVID-19.[6]

---

[6] In his motion for clarification, Sykes represents that the warden responded to his request on September 20, 2021.  Mot. for Clarification at 2.  Because Sykes filed the instant motion 30 days after he sent his request to the warden—at which time the warden had not filed a response—he properly complied with the timing requirements of § 3582(c)(1)(A).

The Government contends that Sykes failed to comply with § 3582(c)(1)(A)'s exhaustion requirement as to his request for release based on his COVID-19 fears.  According to the Government, § 3582(c)(1)(A) requires issue-specific exhaustion, i.e., exhaustion of each ground for compassionate release.  It asserts that because Sykes did not explicitly mention his fear of COVID-19 in his request to the warden, he cannot now raise it before this Court.[7]  This argument is unpersuasive.  The Sixth Circuit has never held that issue-specific exhaustion is required in the compassionate release context.   Nor does the statutory text contain an issue exhaustion requirement.  See 18 U.S.C. § 3582(c)(1); United States v. Williams, 473 F. Supp. 3d 772, 775 (E.D. Mich. 2020) (noting that issue exhaustion "is not mandated in any plain terms of the statute"). Further, several courts within this District have rejected the notion that issue-specific exhaustion is required in the compassionate release context.  See, e.g., United States v. Sherrod, No. 19-20139, 2021 WL 3473236, at *2 (E.D. Mich. Aug. 6, 2021) ("[T]his Court will join the majority of district courts in holding that issue exhaustion is not required."); United States v. Ferguson, No. 10-20403, 2021 WL 1685944, at *2 (E.D. Mich. Apr. 29, 2021) ("The Court is persuaded by the reasoning of the courts which have held § 3582(c)(1)(A) does not require issue exhaustion.").

Ultimately, the Court need not decide whether § 3582(c)(1)(A) requires issue-specific exhaustion.  Even assuming that Sykes fully complied with the mandatory exhaustion requirement, his motion for compassionate release fails on the merits, as discussed below.

## B.  Extraordinary and Compelling Circumstances

Sykes argues that the following are extraordinary and compelling reasons to release him: (i) USP Coleman II's failure to implement the FSA, (ii) the alleged presence of H. pylori at this

---

[7] The Government does not appear to dispute that Sykes properly exhausted his administrative remedies with respect to his requests for release based on USP Coleman II's alleged failure to implement the FSA and the alleged existence of H. pylori at that facility.

prison, and (iii) Sykes's fears of contracting COVID-19.  The Court addresses each asserted reason in turn.

### i.  Implementation of the FSA

Sykes raises an equal protection claim, arguing that USP Coleman II has refused to implement the FSA at the prison.  Mot. at 6 (arguing that USP Coleman II's alleged refusal to implement the FSA "violates Defendant's Equal Protection of Law"); see also Def. Resp. to Gov't Notice of Supp. Authority at 3 (Dkt. 277) (describing this argument as an "equal protection claim").  However, a motion for compassionate release is not the appropriate vehicle to raise an equal protection claim.  See, e.g., United States v. Fitzgerald, 373 F. App'x 935, 936 (11th Cir. 2010) ("As for Fitzgerald's equal protection argument, we have explained that a § 3582(c)(2) proceeding does not constitute a de novo resentencing and does not permit the district court to address extraneous resentencing issues such as constitutional claims.") (punctuation modified). Accordingly, the Court declines to consider Sykes's equal protection argument.

### ii.  H. pylori

Sykes asserts that there is an outbreak of H. pylori at USP Coleman II due to contamination in its water supply, and that Sykes has been "experiencing symptoms consistent with having HPlori [sic]."  Mot. at 4–5.[8]  H. pylori is a non-lethal stomach infection that can be treated with

---

[8] In an affidavit—attached to his response to the Government's notice of supplemental authority—Sykes, for the first time, alleges that there is also an outbreak of Legionnaires' disease at USP Coleman II.  See Sykes Aff. (Dkt. 277-1).  Because Sykes failed to raise this argument in his motion for compassionate release, the Court need not consider it.  See, e.g., United States v. Hendrix, No. 3:14-cr-00161-1, 2021 WL 794939, at *3 n.3 (M.D. Tenn. Mar. 2, 2021) ("Defendant did not raise this argument in the instant motion [for compassionate release], so we do not consider it.").  Even if the Court were to consider this argument, the Court would find that it does not entitle him to release.  Generalized fears of contracting an illness, without more, do not constitute a compelling reason to grant compassionate release.  See United States v. Ramadan, No. 20-1450, 2020 WL 5758015, at *2 (6th Cir. Sept. 22, 2020) (discussing compassionate release motions based on a fear of contracting COVID-19).  Older adults and people with weakened immune

antibiotics.[9]  Courts generally exercise their discretion to find that a defendant's fear of a non-severe, non-lethal illness that can be effectively treated in prison—such as H. pylori—is neither extraordinary nor compelling.  See, e.g., United States v. Mendoza, No. CR13-0238-JCC, 2021 WL 2856673, at *2 (W.D. Wa. July 8, 2021) (holding that a defendant's medical conditions causing chest pain and heart burn—which appear to have included H. pylori—were not extraordinary and compelling because they were not "so severe that he cannot provide self-care within the environment of a correctional facility," nor were they "life-threatening" conditions"); United States v. Hoti, No. 15-CR-651 (LTS), 2021 WL 2581670, at *3 (S.D.N.Y. June 23, 2021) (holding that a defendant's H. pylori was not an extraordinary or compelling reason to release him because the defendant was prescribed medication for the infection and there was no indication in the record that those medications were ineffective).

Here, Sykes has failed to produce any evidence to substantiate his claim of a current outbreak of H. pylori at USP Coleman II.  And even if he were infected and symptomatic, he could easily be treated with antibiotics.  As a result, Sykes's alleged H. pylori symptoms do not entitle him to release.

### iii.  COVID-19

With respect to motions for compassionate release premised on a defendant's fear of contracting COVID-19, "generalized fears of contracting COVID-19, without more, do not constitute a compelling reason" to grant compassionate release.  Ramadan, 2020 WL 5758015, at

---

systems are "particularly susceptible" to Legionnaires' disease.  Mayo Clinic, "Legionnaires' disease,"       https://www.mayoclinic.org/diseases-conditions/legionnaires-disease/symptoms-causes/syc-20351747 (last visited Nov. 17, 2021).  Sykes has not argued that he has any condition that would render him vulnerable to Legionnaires' disease.

[9] Mayo Clinic, "Helicobacter pylori (H. pylori) infection," https://www.mayoclinic.org/diseases-conditions/h-pylori/symptoms-causes/syc-20356171 (last visited Nov. 17, 2021).

*2.  Courts generally consult the guidance on high-risk factors published by the Centers for Disease Control and Prevention (CDC) to determine whether a defendant's specific conditions place him at a higher risk of suffering severe illness from COVID-19.  See United States v. Elias, 984 F.3d 516, 521 (6th Cir. 2021).  Here, Sykes has not pointed to any underlying medical condition that would increase his risk of severe illness from COVID-19.[10]  Sykes's fear of COVID-19 is generalized and, therefore, is not a compelling reason to grant him release.

Sykes's asserted fear of contracting and suffering severe illness from COVID-19 fails for an additional reason: "a defendant's incarceration during the COVID-19 pandemic—when the defendant has access to the COVID-19 vaccine—does not present an 'extraordinary and compelling reason' warranting a sentence reduction."  United States v. Lemons, 15 F.4th 747, 751, (6th Cir. 2021).  Sykes's access to the vaccine is evinced by his vaccination status.  According to his health records, Sykes received his second dose of the two-dose Pfizer vaccine on August 27, 2021.  COVID-19 Vaccine Consent at PageID.1529 (Dkt. 264).[11]

---

[10] To the extent that Sykes suggests that his H. pylori symptoms render him more vulnerable to COVID-19, this argument fails.  H. pylori is not an underlying condition that the CDC recognizes as increasing an individual's risk of severe illness from COVID-19.  See CDC, "People With Certain Medical Conditions," https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Nov. 17, 2021).

[11] Sykes argues that his vaccine will lose effectiveness over time and that the vaccine may not be effective against variants. 2d Reply at 6 (Dkt. 275).  However, there is no reason to believe that Sykes presently does not have immunity from his vaccine.  Under current CDC guidance, immunity from the vaccine lasts "for at least 6 months."  CDC, "Science Brief: SARS-CoV-2 Infection-induced and Vaccine-induced Immunity," https://www.cdc.gov/coronavirus/2019-ncov/science/science-briefs/vaccine-induced-immunity.html#anchor_1635539757101 (last visited Nov. 17, 2021).  Sykes became fully vaccinated approximately two months ago.  As for variants, the CDC advises that COVID-19 vaccines provide protection against Delta and other known variants.  See CDC, "COVID-19 Vaccines Work," https://www.cdc.gov/coronavirus/2019-ncov/vaccines/effectiveness/work.html (last visited Nov. 17, 2021).  In any event, fears of both waning vaccine immunity and the emergence of variants are generic fears that are applicable to the entire population.  Therefore, these concerns do not justify granting Sykes compassionate release.  See Ramadan, 2020 WL 5758015, at *2.

For these reasons, the Court holds that Sykes has failed to show an extraordinary and compelling reason to grant him release.  Even if he had, Sykes's release would still be unwarranted based on the § 3553(a) factors, as explained below.

## C.  Section 3553(a) Factors

Before granting a sentence reduction under the FSA, the Court must consider the § 3553(a) factors, which include the nature and circumstances of a defendant's offenses, the seriousness of the offenses, the need to promote respect for the law, and the need to protect the public from further crimes by the defendant.

There is no question that Sykes's commission of bank robbery, in violation of the conditions of his supervised release prohibiting him from committing further crimes, was serious. Sykes attempts to minimize the seriousness of his crime by arguing that it was not highly violent. Mot. at 9.[12]  Presumably, Sykes is arguing that his bank robbery was not serious because he did not used a weapon.  However, the fact that Sykes was unarmed when he committed the bank robbery does not diminish the seriousness of the offense.  See, e.g., United States v. Burnley, 834 F. App'x 270, 272 (7th Cir. 2021) (affirming district court's denial of motion for compassionate release and explaining that the defendant's commission of unarmed bank robberies made him a danger to public safety); United States v. Catledge, No. 12-cr-00678-MMC-1, 2020 WL 1899401, at *3 (N.D. Cal. Apr. 16, 2020) (denying defendant's motion for compassionate release where the defendant did not engage in violent crime but caused investors to suffer severe financial loss).

---

[12] Specifically, Sykes argues that his crime was "less violent" than the crime of murder, the commission of which did not bar a defendant in another case from being granted compassionate release by the district court, United States v. Bass, 514 F. Supp. 3d 977 (E.D. Mich. 2021).  Mot. at 9.  Bass is not a helpful case for Sykes.  The Sixth Circuit reversed the district court's grant of compassionate release, explaining that the district court erred in weighing the § 3553(a) factors by not giving controlling weight to "the heinous nature of the crimes committed by Bass."  United States v. Bass, —F. 4th—, No. 21-1094, 2021 WL 5099583, at *6–*8 (6th Cir. Nov. 3, 2021).

Sykes also argues that he "no longer poses a danger to the community"—in part due to his "strides to lower his own recidivism risk level"—and that, if released now, he would avoid committing further crimes by focusing on employment, treatment for drug and mental health issues, and taking care of his aging mother. See Mot. at 9; Release Plan (Dkt. 267); Mem re Rehabilitation Efforts (Dkt. 268). However, Sykes's criminal history raises serious doubt as to Sykes's position that he has been completely rehabilitated since being sentenced one year ago and would not commit further crimes if released at this time. Only six weeks after he was released from serving a 17-year sentence for participating in a bank robbery (during which Sykes possessed a firearm) and committing perjury, Sykes committed another bank robbery. This offense was both a federal crime and a violation of the conditions of his supervised release for both prior federal offenses. After Sykes was sentenced for violating the conditions of supervised release, he continued his noncompliant behavior in prison, as evidenced by the fact that he pleaded guilty to possessing a cellphone in Genesee County Jail on February 3, 2021. See Genesee Cnty. Ct. Record (Dkt. 263-2). This history shows that Sykes is not deterred by lengthy prison sentences or release conditions. If released now, only a year after being sentenced, there is a serious risk that Sykes would commit additional crimes, and quite possibly another bank robbery.

Just one year ago, the Court found that a prison sentence of 60 months was appropriate in light of the § 3553(a) factors. Releasing Sykes when he has served less than half of this sentence would not reflect the seriousness of his crime, promote respect for the law, or protect the public from further crimes by Sykes. See, e.g., Ruffin, 978 F.3d at 1008 (affirming district court decision that § 3553(a) factors did not support a sentence reduction in part because the defendant had served less than half of his sentence); United States v. Richards, No. 12-20372, 2021 WL 912389, at *3 (E.D. Mich. Mar. 10, 2021) ("[A]llowing Defendant to be released after serving less than half of

his sentence would not promote respect for the law or proper deterrence, [or] provide just punishment . . . .").  Accordingly, the Court declines to grant Sykes's motion for compassionate release.

## II.  CONCLUSION

For the reasons stated above, Sykes's motion for compassionate release (Dkt. 262) is denied and his motion for clarification (Dkt. 272) is granted.

SO ORDERED.

Dated: December 1, 2021                           s/Mark A. Goldsmith
   Detroit, Michigan                      MARK A. GOLDSMITH
              United States District Judge