UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

United States of America,

   Plaintiff,         Crim. No. 03-80028

v.               Hon. Mark A. Goldsmith

Dorian Sykes,

   Defendant.

---

**United States' Response to Defendant's
"Emergency" Motion for Compassionate Release (R. 311)**

---

  On December 1, 2021, this Court denied the defendant's first Motion for Compassionate Release because Sykes failed to demonstrate an extraordinary and compelling reason that would make him eligible for release and even if he had, Sykes would be a danger to the community if released. (ECF No. 280, PageID.1872–74). Nothing has changed since the Court made this determination 10½ months ago. Sykes's generalized fear of monkeypox, a non-terminal illness that is not currently present at USP Coleman II, does not constitute an extraordinary and compelling reason for release. In any event, the § 3553(a) factors still do not support his release. Sykes's commission of additional bank robberies

while on supervised release was serious. (ECF No. 280, PageID.1872). Sykes's criminal and BOP disciplinary history continue to demonstrate that Sykes's claims that he would not pose a danger if released are not credible. (*Id.* at PageID. 1873). Sykes also has served just over half of the 60-month sentence that this Court found was appropriate based on the § 3553(a) factors; so releasing him now would not promote respect for the law, reflect the seriousness of his crimes, provide adequate deterrence, or protect the public. (*Id.*). Nor do Sykes's complaints about the mental health treatment he is receiving while in BOP custody change the § 3553(a) analysis. Sykes fails to demonstrate an extraordinary and compelling reason for release so the Court need not consider whether the § 3553(a) factors warrant a sentence reduction. But, even if the Court did evaluate those factors, Sykes still would not qualify for release.

I.    **Background**

A.    **Criminal Conduct**

On August 12, 2019, at approximately 9:15 a.m., Sykes entered a Citizen's Bank in Warren, Michigan. While seated at one of the customer service desks, Sykes slid the bank teller a demand note and stated, "It's a robbery, don't make it obvious and no one will get hurt. No dye packs." Sykes followed the teller to the front counter, where she removed $1,220.00 in U.S. currency from one of the drawers. Sykes grabbed the money and left the bank.

Later that day, at approximately 3:10 p.m., Sykes struck again. He entered a Comerica Bank in Oak Park, Michigan. Sykes slid a demand note to a teller that stated, "This is a robbery." Sykes also declared, "This is a robbery, give me everything, no packs and don't sound the alarm." The victim teller moved to open her teller drawer and after not being able to open it quickly enough, Sykes threatened her by saying, "put your hands up" and "don't mess with me." The victim teller instructed another employee to give Sykes money because she could not put her hands down. The employee slid $810.00 in United States currency through the opening at the bottom of safety glass towards Sykes; he grabbed it and left.

When he robbed the two banks, Sykes was on supervised release having just completed a 17-year prison sentence for bank robbery, brandishing a firearm in furtherance of a crime of violence and felon in possession of a firearm (this case) and perjury (Case No. 04-cr-80623).

## B.  Defendant's background

Sykes is a serial bank robber and repeat criminal offender. Sykes's history paints a troubling and unmistakable picture of a person who has a complete disregard for the law. Both before and after Sykes's 17-year period of incarceration, he repeated a pattern: commit a crime and then violate conditions of release or supervision by committing an additional offense. For example, Sykes

received a sentence of probation after being convicted in 1997 as a juvenile of retail fraud and loitering. He violated his probation when he was arrested in January 2001 for possession of a controlled substance under 25 grams. (PSR ¶ 43). He then violated his conditions of bond when he was arrested in April 2001 for receiving and concealing stolen property. (PSR ¶ 43-44). During that arrest, he lied to officers about his age. *Id.* Due to his lies, he was placed in a juvenile holding cell and then attempted to escape. (PSR ¶ 44). For this, he was charged and convicted of resisting and obstructing an officer. *Id.* After serving a 6-month jail sentence, he was released early for entry into a Salvation Army Program. *Id.* Sykes violated and absconded from that program. *Id.* In 2002, Sykes was arrested and convicted for unlawful use of a motor vehicle. (PSR ¶ 45). He was sentenced to 6 to 30 months in custody, followed by a term of probation. He violated the terms of his probation and, while that violation warrant was active, Sykes committed the bank robbery that resulted in this case. (PSR ¶ 47). After Sykes pleaded guilty to that bank robbery and was awaiting sentencing, he committed perjury by testifying falsely in his co-defendant's trial resulting in criminal case 04-cr-80623. (PSR ¶ 48). While on federal supervised release for this case and the perjury case, Sykes committed two new bank robberies which resulted in the case before Judge Borman (19-20550) and the two supervised release violation cases before this Court.

Sykes's behavior since being in custody in this case has been troublesome as well. Notably, after he was sentenced in this case, Sykes continued his pattern of criminal activity when he pleaded guilty to possessing a cellphone in Genesee County Jail on February 3, 2021. (ECF No. 263-2, PageID.1523). He has faced disciplinary sanctions from BOP for assaulting staff (3/10/2021), indecent exposure (3/8/2021), refusing a work or program assignment (12/17/2019), and phone abuse (12/6/2019). *See* Ex. A, BOP Disciplinary History. Sykes's BOP disciplinary history from when he was serving his 17-year sentence is also lengthy. *Id.*

C. **Relevant Procedural History**

On November 16, 2020, after Sykes admitted to violating his supervised release, this Court sentenced him to 60 months in prison, to run concurrent to cases 04-80623 and 19-20550[1]. (ECF No. 240, PageID.1419). The defendant is currently serving his sentence at USP Coleman II with an anticipated release date of July 7, 2024[2]. He has served just over half of his 60-month sentence.

On August 30, 2021, Sykes moved for compassionate release, citing his

---

[1] On November 17, 2020, Judge Borman sentenced Sykes to 68 months in prison in Case No. 19-20550, to run concurrent to this case and 04-80623. (19-20550, ECF No. 155, PageID.980–81).
[2] This is Sykes's projected release date on the BOP public website which is calculated by the automatic awarding of good conduct time at the rate of 54 days per year of sentence imposed. Good conduct time may be taken away from an inmate as a sanction imposed for violating disciplinary rules.

generalized fear of the Covid-19 pandemic as well as an unsubstantiated fear of becoming infected with H. pylori. (ECF No. 262, PageID.1470). On December 1, 2021, this Court denied Sykes's compassionate release motion because Sykes had not demonstrated an extraordinary and compelling reason for release and the § 3553 factor did not support his release. (ECF No. 280, PageID.1872–74).

Just 10½ months later, Sykes filed the instant compassionate release motion[3]. (ECF No. 311, PageID.2085). This time, Sykes cites his generalized fear of monkeypox as an extraordinary and compelling reason justifying his release. (*Id.* at PageID.2089–92). As to the § 3553 factors, Sykes argues that he should be released because he is not receiving the mental health treatment that would allow him to "function in a free society." (*Id.* at PageID.2094-98; 2144–47). In support of his motion, Sykes also submitted a "release plan" detailing where he would stay and how he would find employment. (*Id.* at PageID.2140).

## II. The Court should deny Sykes's motion for compassionate release.

Sykes's motion for compassionate release should be denied. A district court has "no inherent authority . . . to modify an otherwise valid sentence." *United States v. Washington*, 584 F.3d 693, 700 (6th Cir. 2009). Quite the contrary: a district court's authority to modify a defendant's sentence is "narrowly

---

[3] On September 21, 2022, Sykes filed an identical motion in Case No. 19-20550. That motion is still pending.

circumscribed." *United States v. Houston*, 529 F.3d 743, 753 n.2 (6th Cir. 2008). Absent a specific statutory exception, a district court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c). Those statutory exceptions are narrow. *United States v. Ross*, 245 F.3d 577, 586 (6th Cir. 2001). Compassionate release under 18 U.S.C. § 3582(c)(1)(A) is equally narrow.

Once the statutory exhaustion requirement is satisfied, the court has to find that "extraordinary and compelling circumstances merit a sentence reduction" and that "the applicable § 3553(a) factors warrant such a reduction." *United States v. Hampton*, 985 F.3d 530, 531 (6th Cir. 2021); 18 U.S.C. § 3582(c)(1)(A). A district court may deny compassionate release when the defendant has failed to satisfy either requirement. *See United States v. Traylor*, 16 F.4th 485, 487 (6th Cir. 2021) ("And because the district court determined that there was no extraordinary and compelling reason to grant Traylor's motion, it also did not abuse its discretion by denying the motion without addressing whether the 18 U.S.C. § 3553(a) factors support a sentence reduction."); *United States v. Elias*, 984 F.3d 516, 520 (6th Cir. 2021) (affirming district court's denial of compassionate release where defendant failed to establish extraordinary and compelling reasons, without analysis of the § 3553(a) factors).

### A. Sykes has complied with the mandatory exhaustion requirement.

Compassionate release requires exhaustion. If a defendant moves for compassionate release, the district court may not act on the motion unless the defendant files it "after" either completing the administrative process within the Bureau of Prisons or waiting 30 days from when the warden at his facility received his request. 18 U.S.C. § 3582(c)(1)(A); *United States v. Raia*, 954 F.3d 594, 595-96 (3d Cir. 2020). Because this requirement is a statutory one and not judicially crafted, it is mandatory. *Ross v. Blake*, 136 S. Ct. 1850, 1856–57 (2016); *Island Creek Coal Co. v. Bryan*, 937 F.3d 738, 751 (6th Cir. 2019). Sykes appears to have submitted a request for compassionate release on July 7, 2022 to the warden at his facility alleging denial of mental health treatment. (ECF No. 311, PageID.2106–07). Sykes also sent an email to the Warden on August 12, 2022, this time seeking a sentence reduction based on his generalized fear of monkeypox. (*Id.* at PageID.2108). Since more than 30 days have passed since his requests, he has complied with the mandatory exhaustion requirement.

### B. There are no extraordinary and compelling reasons to grant Sykes compassionate release.

As is true with COVID–19, the defendant's generalized fear of monkeypox does not constitute an "extraordinary and compelling" reason for his release. *See United States v. Ramadan*, 2020 WL 5758015, at *2 (6th Cir. Sept. 22, 2020). According to the CDC website, "Monkeypox symptoms are similar to smallpox

- 8 -

symptoms, but milder, and monkeypox is rarely fatal." While there are no treatments specifically for monkeypox, an antiviral drug that the FDA has approved to treat smallpox may be used to treat monkeypox. In August 2022, BOP issued Clinical Guidance that provides recommended procedures for the detection, diagnosis, treatment, and prevention of monkeypox within the BOP setting.

Sykes cites a number of facts in support of his argument that monkeypox provides an "extraordinary and compelling" reason for his release. Sykes argues that the State of Florida, where USP Coleman II is located, has a very high number of confirmed cases of monkeypox. Sykes further claims that USP Coleman II is at higher risk for monkeypox because it is "designated by the BOP as being a 'special needs prison'" which houses a population prone to "homosexual relations." (ECF No. 240, PageID. 1589–90). But, according to BOP Senior Regional Counsel, Tracy Knutson, the BOP does not house inmates by sexual preference or transgender status and that as of October 26, 2022, there are no cases of monkeypox at USP Coleman II. Sykes's generalized fear of contracting monkeypox which does not make him eligible for compassionate release.

Also, even if Sykes were infected with monkeypox, then his symptoms would be managed and he would be prescribed an antiviral medication if he were deemed eligible. Monkeypox, unlike Covid-19 in an unvaccinated individual, does not present an increased risk of an adverse outcome such that it would present "a

serious physical or medical condition….that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility." USSG § 1B1.13 cmt n.1(A)(ii)(I). As such, Sykes's claims regarding monkeypox cannot provide a basis for a sentencing reduction.

### C. The § 3553(a) factors preclude Sykes's release.

Even if Sykes were able to show that monkeypox constitutes an "extraordinary and compelling reason for release," the district court may not grant the motion unless the factors in 18 U.S.C. § 3553(a) support release. 18 U.S.C. § 3582(c)(1)(A); *United States v. Ruffin*, 978 F.3d 1000, 1008-09 (6th Cir. 2020). As at sentencing, those factors require the district court to consider the defendant's history and characteristics, the seriousness of the offense, the need to promote respect for the law and provide just punishment for the offense, general and specific deterrence, and the protection of the public. 18 U.S.C. § 3553(a).

Just 10½ months ago, this Court determined that these factors weighed against releasing Sykes. (ECF No. 280, PageID.1872–74). As required, the Court considered the factors set forth in 18 U.S.C. § 3553(a) and determined that release was not appropriate. 18 U.S.C. § 3582(c)(1)(A). Nothing has changed since then to alter the Court's analysis. This Court found "[i]f released now . . . there is a serious risk that Sykes would commit additional crimes, and quite possibly another bank robbery. (*Id.* at PageID.1873). It also found that releasing Sykes early "would not

reflect the seriousness of his crime, promote respect for the law, or protect the public from further crimes by Sykes." *Id.*

In his motion, Sykes focuses heavily on the mental health treatment he is receiving in BOP custody, which he claims he is inadequate. He disagrees with the diagnoses of his mental health condition by trained BOP psychologists. But the BOP is providing Sykes with the mental health treatment it deems appropriate. The Court is not in the position to assess what Sykes's mental health diagnosis should be, or the level or type of care Sykes should be receiving. Indeed, the Individual Therapy notes documenting therapy sessions with Sykes are extensive. *See* Ex. B, Sykes Psychology Services records, 9/21/2021–8/11/2022 (sealed). The most recent note from his August 11, 2022 therapy session documents that the treating psychologist did not find that reclassifying Sykes's level of mental health care was warranted. *Id.* at 1–3, 7. A review of these records also demonstrates that the issues Sykes has encountered with his treatment are his own doing. Sykes is non-compliant with his medication. *Id.* at 3–4, 12. Sykes was expelled from group therapy because he masturbated during the session. *Id.* at 5–6. He became non-responsive to his treating psychologist that prompted BOP to assign him a new one. *Id.* at 9–10, 12. He demanded a new provider because he became unhappy that his old provider would not intervene when he wanted a new cellmate or was trying to obtain a paid job. *Id.* at 11, 15

There is no basis under § 3553(a) to release Sykes based on his claims that the mental health treatment he is receiving is somehow inadequate. BOP is in the best position to know what kind of care Sykes should receive. Sykes's treatment records demonstrates that BOP has provided regular mental health treatment for Sykes, even when he has been combative and non-compliant.

A defendant's failure to establish that the § 3553(a) factors support relief is an independent basis for denying compassionate release. *United States v. Ruffin*, 978 F.3d 1000, 1008–09 (6th Cir. 2020); *accord United States v. Austin*, 825 F. App'x 324, 325–27 (6th Cir. 2020) (upholding a district court's denial of compassionate release based on the § 3553(a) factors); *United States v. Kincaid*, 802 F. App'x 187, 188–89 (6th Cir. 2020) (same). Here, even if the Court were to find that Sykes established extraordinary and compelling reasons for his release, the § 3553(a) factors still disqualifies him from being eligible for compassionate release.

Once again, Sykes fails to demonstrate how releasing him early would sufficiently reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense, especially given his criminal history and demonstrated history of committing new criminal offenses while on release. The defendant's offense is unquestionably serious. Sykes committed two bank robberies just six weeks after being released from a 17-year prison sentence for the

same type of offense. Moreover, he was on federal supervised release in two different cases when he committed these crimes. Sykes has demonstrated by his unabated criminal behavior that he will not be deterred by restrictions and conditions placed upon him by the courts or by lengthy prison sentences. His history proves that his release plan is not credible. Defendant has been engaged in criminal activity for the majority of his adult life. His prior convictions and probation violations demonstrate a lack of respect for the law. This Court found just 23 months ago that a 60–month sentence was warranted after careful consideration of the § 3553(a) factors. It then found just 10½ months ago that the § 3553(a) factors weighed against Sykes's release. Nothing has changed that would warrant a reduction in sentence.

### D.  Sykes's Equal Protection Claim

As he did in his first compassionate release motion, Sykes again raises an equal protection claim. (ECF No. 311, PageID.2099). This Court previously declined to consider Sykes' equal protection argument because "a motion for compassionate release is not the appropriate vehicle to raise an equal protection claim." (*Id.* at PageID.1869). This time, Sykes argues that it would violate his equal protection rights if the Court were to deny his motion. However, as this Court previously held, a motion for compassionate release is not the place to raise extraneous constitutional claims. *See, e.g. United States v. McCutcheon*, 368 Fed.

App'x 510, 511 (5th Cir. 2010) ("equal protection claim[s] are not cognizable in a § 3582(c)(2) proceeding"); *United States v. Fitzgerald*, 373 F. App'x 935, 936 (11th Cir. 2010) ("As for Fitzgerald's equal protection argument, we have explained that a § 3582(c)(2) proceeding…does not permit the district court to address 'extraneous sentencing issues' such as constitutional claims.").

## Conclusion

Upon consideration of all pertinent factors, the motion for compassionate release should be denied.

Respectfully submitted,

Dawn N. Ison
United States Attorney

*/s/ Frances Lee Carlson*
FRANCES LEE CARLSON
Assistant United States Attorney
United States Attorney's Office
Eastern District of Michigan
211 West Fort Street, Suite 2001
Detroit, MI 48226
Phone: (313) 226-9696
Email: frances.carlson@usdoj.gov

Dated:   November 1, 2022

**Certificate of Service**

I hereby certify that on November 1, 2022, I electronically filed the foregoing document with the Clerk of the Court using the ECF system.

I further certify that a copy of the foregoing document was mailed by U.S. mail to the following non-ECF participant:

>Dorian Trevor Sykes
>Registration No. 31185-039
>USP Coleman II
>U.S. Penitentiary
>P.O. Box 1034
>Coleman, FL 33521

>*/s/ Frances Lee Carlson*
>FRANCES LEE CARLSON
>Assistant United States Attorney

Dated:  November 1, 2022